CRESROAD ESTATES INC., Landlord, *v.* SEYMOUR TENZER, Tenant.

Municipal Court of the City of New York, Borough of The Bronx, March 1, 1949.

*Leon Schreiber* for landlord.

*Louis Friedland* for tenant.

FRANK, J. This is a nonpayment proceeding.

I find from the evidence that on August 23, 1946, this tenant and the predecessor of the present landlord entered into an

agreement to arbitrate the reasonable rent of the premises in question to be used as space by the tenant for the practice of his profession as a physician.

There was received in evidence an award of the arbitrators named in said agreement fixing the rental value of the premises at $3,000 per annum for the three-year period from September 1, 1946, to August 31, 1949. This award is entitled "Supreme Court of the State of New York" and is a filed paper in the office of the County Clerk of Bronx County index No. 5303/1946.

No motion to confirm the award pursuant to section 1461 of the Civil Practice Act or to vacate or modify it pursuant to sections 1462 or 1462-a of the Civil Practice Act was made by any of the parties thereto.

The evidence is undisputed that the tenant paid the rent so fixed in monthly installments of $250 from September 1, 1946, to December 31, 1948, a period of two years and four months.

Upon the refusal of the tenant to pay the rent for January and February, 1949, the landlord commenced these proceedings. The tenant in his answer denies the material allegations in the petition and affirmatively alleges by way of defense "that the rent * * * is unjust, unreasonable and oppressive" and that the rent is excessive to the extent of $123.50 per month. By way of defense and counterclaim there is alleged the making of a lease at an annual rent of $3,000; the payment of rent thereunder up to December 31, 1948; that the lease provides for rent in excess of "emergency rent" as provided in chapter 314 of the Laws of 1945, as amended; that tenant has been damaged to the extent of $1,358 with a prayer for judgment in that amount.

The counterclaim must be dismissed.

The proof offered by the tenant to support the counterclaim I would hold to be insufficient to sustain it on the testimony offered. However, the question of fact is not the determining factor in the light of the question of law hereinafter discussed.

Section 4 of the Emergency Business Space Rent Control Law (L. 1945, ch. 314, as amd.) provides for the fixing of "reasonable rent" by three different methods. The tenant herein chose to submit this question to arbitration, one of the prescribed methods. By this counterclaim he now seeks to have the court vacate, modify or ignore the award made by the arbitrators. This court has no such power.

The tenant had a remedy if the award was not proper or if the arbitration was not conducted as required by article 84 of the Civil Practice Act or section 15 of the Emergency Business Space Rent Control Law as in force in 1946 (L. 1946, ch. 273,

§ 3).  He did not choose to avail himself of the rights accorded to him thereunder.

As was said by Presiding Justice Peck in the prevailing opinion in *Roof Health Club* v. *Jamlee Hotel Corp.* (271 App. Div. 481, 484, affd. 296 N. Y. 883): '' If he also has the right, as plaintiff contends, of having the reasonableness of the rent agreed upon reviewed and determined by the Supreme Court, his agreement is illusory and the sanction in the law for by-passing arbitration and the court and making one's own decision is rendered nugatory.  While a question of reasonableness would ordinarily be a triable issue, its determination under the emergency rent law is by whomever the parties elect for the purpose, either arbitrators, the court *or* the parties themselves.  The law, in our opinion, never intended a secondary court review of the reasonableness of rent fixed by the parties themselves in a firm agreement.''

To like effect is *Siegel* v. *Gottlieb* (188 Misc. 238, 239) wherein the court said: '' Once the reasonable rent is fixed by the Supreme Court or by arbitration, that rent continues for the period of the emergency or until a new application is made to the Supreme Court ''.

What is said by the courts in prohibiting collateral attacks upon agreements and leases fixing reasonable rent, applies with at least equal force to the fixation of a reasonable rent by arbitration.

The tenant offered proof to support his contention (although not specifically pleaded) that the award was not the result of a real arbitration, but that, on the contrary, such arbitration was *pro forma,* was perfunctory, a sham and not in compliance with the requirements therefor.  The testimony was received subject to a motion to strike out as inadmissible in this proceeding.

The principal question to be determined therefore is whether this court may pierce the shield of an award which on its face complies with the legal requirements and which is part of a Supreme Court proceeding.

Section 1459 of the Civil Practice Act provides that '' Arbitration * * *shall be deemed a special proceeding, of which the court specified in the contract or submission, or if none be specified, the supreme court * * * shall have jurisdiction.''

*Matter of Viro Realty Corp.* (*Belmont*) (297 N. Y. 871) so heavily relied upon by the tenant was a direct attack upon an arbitration by a motion to vacate in the Supreme Court.  It does not directly or by implication authorize or empower this court to collaterally consider the facts in connection with the arbitration.

The only deformity to the arbitration or award urged or claimed as apparent on the face of these special proceedings is paragraph 4 of the agreement as follows: "4. The parties do waive the recording of testimony in this arbitration and notice of hearings (but not the hearings themselves) before the arbitrators."

The quoted paragraph of the agreement cannot be construed as a waiver of the hearings.

As was said in the case of *Matter of Anderson Trading Co.* v. *Brimberg* (119 Misc. 784) "The defendant also complains because the arbitrator failed and refused to have the testimony taken down by a stenographer and transcribed. There is no rule, however, which requires this practice".

The requirement of submission of a transcript of the hearings was added to section 15 by amendment in 1947 (L. 1947, ch. 823) and took effect after the arbitration and award here considered was completed. Even assuming that this amendment were in effect at the time of submission the reference to the filing of a transcript with the application can refer only to a motion to confirm an award in the Supreme Court.

The power and authority of courts generally to inquire into the *bona fides* of arbitrations has been explored exhaustively by innumerable decisions in all the courts of the State.

In the leading case of *Matter of Wilkins* (169 N. Y. 494) the Court of Appeals said (pp. 496–497): "Where the merits of a controversy are referred to an arbitrator selected by the parties, his determination, either as to the law or the facts, is final and conclusive, and a court will not open an award unless perverse misconstruction or positive misconduct upon the part of the arbitrator is plainly established, or there is some provision in the agreement * * * authorizing it. If he keeps within his jurisdiction and is not guilty of fraud, corruption or other misconduct affecting his award, it is unassailable, operates as a final and conclusive judgment".

The whole purpose of article 84 of the Civil Practice Act is to place the stamp of finality upon arbitrations and awards thereunder. Were the rule otherwise it would make an award the commencement, not the end of litigation (*Matter of Shirley Silk Co.* v. *American Silk Mills,* 257 App. Div. 375; *Burchell* v. *Marsh,* 17 How. [U. S.] 344, 349; *Matter of Friedheim [International Paper Co.],* 265 App. Div. 601; *Matter of Goff & Sons [Rheinauer],* 199 App. Div. 617).

In *Stecklow Bros., Inc.,* v. *Carol Management Corp.* (78 N. Y. S. 2d 427, 428) it was said: " ' when the arbitrators were

summoned \* \* \* to make an award, whether or not further discussion should be had between them \* \* \* [is a matter] of internal administration \* \* \* which rested in the sound discretion and judgment of the arbitrators themselves.' *Matter of Bridgeman & Holtzman* v. *Gondek,* 235 App. Div. 129, 131 ''.

It thus appears that the settled law permits of no direct attack upon an award in the absence of a showing of fraud or corruption or a noncompliance with the statutory provisions creating arbitrations.

I find that there is no proof of noncompliance with the statutory requirement as specified either in the Civil Practice Act or the Emergency Business Space Rent Control Law's application thereto.

To permit a collateral attack upon the award in this proceeding in the absence of any patent defect in the award would do violence to the entire spirit of legal sanction of arbitrations as well as to the time honored principle which expresses repugnance to multiplicity of actions. Intensifying the soundness of these accepted rules is the fact that the tenant has occupied these premises for over two years without seeking relief, remaining quiescent, while the predecessor of the present landlord disposed of the property. It is a fair assumption that the present landlord undoubtedly purchased the building at a price which took into consideration the rental paid by the tenant.

A final order will be entered for the landlord dismissing the counterclaim, without prejudice, however, to the rights of the tenant to seek recovery in another proceeding and without prejudice to the right of the tenant in an appropriate action or proceeding to set aside the award. Rent is fixed at $250 per month. Personal service having been made judgment will be entered for the landlord in the sum of $500. Five days' stay.